IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Southern Pump and Tank Co., LLC, | C. A. No. 2:06-1133-RSC |
| Plaintiff, | |
| -versus- | **O R D E R** |
| Environmental Projects Group, Inc., a/k/a EPG, Inc., | |
| Defendant. | |

This contract action is before the Court for all proceedings and entry of judgment on the consent of the parties and the Order of Reference entered in accord with 28 United States Code § 636(c) on January 7, 2008. A non-jury trial was held on March 31, 2008 through April 2, 2008. Testifying at the time of trial on behalf of Plaintiff, Southern Pump and Tank Company, were Archibald Muckenfuss, Divisional Manager for SPATCO and Chris Elrod, Vice President of Finance.

Testifying on behalf of the defendant Environmental Projects Group, Inc. were Todd Allan Walker, David Parlman and John Mahoney.

Testimony of Bill Jernigan was offered by both parties by means of deposition excerpts.

The parties have exchanged proposed findings of fact and conclusions of law. The following findings of fact and conclusions

1

of law are entered in accord with the provisions of Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. This action was commenced by Plaintiff, Southern Pump and Tank Company (SPATCO), a limited liability corporation organized under the laws of the State of North Carolina, on April 12, 2006 against Environmental Projects Group, Inc., (EPG), a corporation organized under the laws of the State of South Carolina, for breach of three separate contractual agreements. The complaint sets forth three separate causes of action, each for breach of contract for the respective three agreements. SPATCO alleged that EPG breached the contracts in the following particulars:

    a. Failing to supply adequate labor;

    b. Failing to prosecute work;

    c. Failing to pay subcontractors and/or supplier in a timely manner;

    d. Failing to perform its contractual duties in a timely and professional manner; and

    e. Failing to reimburse SPATCO for damages and delays caused by EPG's failure of performance.

2. EPG timely answered and counterclaimed for breach of contract against SPATCO for failure to pay all amounts due and owing under the contracts. SPATCO timely responded to the counterclaim.

3. In the early 2000's SPATCO, a southeastern based multi-branch petroleum equipment supplier, was approached by Southern Terminal Services (STS) through Mike Green to solicit its involvement with a project to install several petroleum fueling systems at the Fort Carson, Colorado, military base.

4. SPATCO is in the business of providing tanks and pump equipment for petroleum products to fuel dispensaries. While capable of doing site preparation and installation, SPATCO generally subcontracts this work out to other companies.

5. SPATCO thereupon contacted David Parlman of Environmental Projects Group (EPG) regarding bidding the installation of the equipment from the initial site preparation through completion as a functioning facility.

6. SPATCO and EPG were familiar with each other and their qualifications and capabilities both from prior projects and prior employment.

7. SPATCO was aware that David Parlman and Todd Walker of EPG had previously worked on a large project at Fort Carson, Colorado and, as a result, were familiar with that environment, climate and local subcontractors.

8. The parties anticipated dividing responsibilities on the Projects as follows: SPATCO would provide the pumping and tank equipment, i.e. the equipment that would become permanent parts of the completed and operating facilities, and EPG would provide all

installation services, either directly or through subcontractors.

9. Parlman indicated that EPG was interested in the Projects and he with Bill Jernigan, then of SPATCO, visited the sites of the Projects in Colorado on at least two occasions prior to the preparation of their respective bids.

10. Parlman and Jernigan met with Mike Green of STS, which provided a "schedule of values" an inventory list representing how STS wanted to receive bids for the project.

11. SPATCO and EPG used drawings prepared by STS to create the "schedule of values" and bid. The STS drawings were admitted into evidence as Defendants Exhibits 5, 7 and 9. These drawings were not standard engineer drawings and designs for the construction of the project, but rather far less detailed drawings prepared by STS. EPG used the STS "schedule of values" to prepare bid prices for the specific installation components. Using these bid prices, SPATCO prepared three bids to STS. (Plaintiff's Exhibit 14).

12. On or about April 26, 2004, STS entered into three separate agreements with SPATCO providing that for certain agreed upon consideration, SPATCO would perform design, permitting, construction and testing for three automated fueling facilities (the Projects) in Fort Carson, Colorado. The fueling facilities were identified by the agreements as: the Vehicle Facility, the Rapid Refuel (Helo) Facility, and the Bulk Fuel Facility.

13. SPATCO, the general contractor, in turn, entered into three separate, fixed-price contracts (the Subcontracts) with sub-contractor Defendant EPG to perform permitting, construction and testing work required on the Projects at each of the three facilities, the Vehicle Subcontract (Contract No. ST-0204-S), (See Pl.'s Ex. 4), the Helo Subcontract (Contract No. ST-0204-S) (See Pl.'s Ex. 5), and the Bulk Subcontract (Contract No. ST-0204-S) (See Pl.'s Ex. 6).

14. Under the Subcontracts, in return for the full and complete performance of EPG's obligations thereunder, SPATCO agreed to pay EPG the following amounts:

| | |
|---|---|
| Vehicle Subcontract (See Pl.'s Ex. 4 § 3.1) | $396,529.00 |
| Helo Subcontract (See Pl.'s Ex. 5 § 3.1) | $263,304.00 |
| Bulk Subcontract (See Pl.'s Ex. 6 § 3.1) | $679,022.00 |
| **TOTAL** | **$1,338,855.00** |

15. The Subcontracts delineated the procedures for payments to EPG for its services thereunder:

> 3.3 Subcontractor shall submit progress billings on a monthly basis for all work completed during the previous month. Invoices shall be s submitted on standard AIA forms. Invoices shall be prepared in a timely fashion and reviewed with the Contractor's representative prior to formal submittal. Contractor will certify the invoice and issue payment
>
> 3.4 Invoices will be paid within 30 days of receipt of an approved invoice. Ten percent retainage will be withheld from each invoice. Final payment including retainage will be released

> on completion of all punch list work and receipt of a final invoice accompanied by a release of liens for all suppliers, subcontractors and tradesmen employed in the performance of the Services.

(See Ex. 4 §§ 3.3-3.4, Ex. 5 §§ 3.3-3.4, Ex. 6 §§ 3.3-3.4).

16. The Subcontracts provided that Contractor [SPATCO] shall pay for and Subcontractor [EPG] shall perform the Scope of Work as set forth in Attachment A (Services) and Attachment B (Operational Capabilities), attached thereto and incorporated therein, pursuant to the terms and conditions expressed therein. (See Ex. 4 § 1.1, Ex. 5 § 1.1, Ex. 6 § 1.1).

17. Unfortunately the subcontracts were not accompanied by final plans and designs which detailed the work to be performed by EPG. It was SPATCO's obligation to design the Projects.

18. Under Attachment A to the Subcontracts, EPG was responsible for providing installation services on the Projects, including (but not limited to) the following categories of work:

> All Permitting
> All Demolition and disposal
> All Excavation and dewatering
> Grading, Drainage and Paving
> All Fencing and Gates
> Operations Building
> All Electrical Lighting and Pre-wired Phone Lines in Buildings
> Fuel Islands and Canopy
> Fuel Storage and Dispensing Systems
> Piping System Design and Construction
> Fuel Management System
> Tank Gauging and Line Leak Detection System
> All Testing and Inspection

(See Ex. 4 Att. A, Ex. 5 Att. A, Ex. 6 Att. A).

19. EPG was originally charged with performing all electrical

6

work; however, before work on the Projects began, the parties orally agreed that SPATCO, not EPG, would perform electrical work on the Projects.

20. Section 2.1 of the agreements set a deadline for completion of the Projects and indicated that time was of the essence,

> Subcontractor recognizes and accepts that time is of the essence. Owner's contract with the Government requires that the facility be put into operation by November 1, 2004. By accepting this agreement, subcontractor agrees to have the facility constructed, tested and ready for full operation by that date.

(See Ex. 4 § 2.1, Ex. 5 § 2.1, Ex. 6 § 2.1).

21. The Subcontracts provided for liquidated damages for delay in completion of EPG's work thereunder,

> Subcontractor [EPG] and Contractor [SPATCO] mutually agree that no penalties shall apply for delayed completion of the Services through December 1, 2004. Thereafter, Subcontractor will be subject to a late penalty of $200.00 per day for each day that completion is delayed beyond December 1, 2004. For purpose of penalty application, it is mutually agreed that completion determination shall not include punchlist items of a cosmetic nature that do not affect the safe, efficient operation of the fuel systems.

(See Ex. 6 § 2.6)(Bulk Subcontract).

Under the Helo and Vehicle Subcontracts, the daily amount was $75.00. (See Ex. 4 § 2.6; Ex. 5 § 2.6).

22. Work on the Projects was originally to begin in late-May or early-June of 2004.

23. However, because the United States government failed to

7

meet certain public notice requirements, the start of work was delayed.

24. During the process of developing bid prices and site visits, EPG met with Chase Construction of Colorado as a prospective subcontractor to EPG.

25. The bid prices that led to the SPATCO contract with STS and the subcontracts between EPG and SPATCO were based at least in part upon Chase Construction performing certain work on the Projects.

26. EPG intended to rely on Chase Construction as a subcontractor to perform 70% or more of its obligations under the Subcontracts.

27. Specifically, Chase Construction was to perform all of EPG's work except running fuel lines and setting tanks, both of which EPG would do, and the electrical work which SPATCO agreed to perform on its own.

28. No written contracts were executed binding Chase Construction to perform work on the Projects.

29. Because of the delay of the start of the Projects, Chase Construction accepted work elsewhere in Colorado and was not available to work on the Projects.

30. EPG first learned of Chase Construction's unavailability in July 2004.

31. As a result of Chase Construction's unavailability, EPG

was forced to retain others to perform work on the Projects.

32. Because of delays in starting the project, the withdrawal of Chase Construction, delays in equipment delivery, design changes, and weather, among other things, the Project were not completed in the time period contemplated at the outset.

33. Throughout EPG's tenure on the Projects, SPATCO failed to provide complete design drawings, failed to appoint a supervisor on the job and failed to have a full-time representative on the job site. However, largely by long distance SPATCO committed to STS that EPG would perform work changes or additions to the Projects without consulting with EPG, without determining if the changes were within the scope of EPG's work, without determining if the changes would result in additional charges by EPG, and without issuing all appropriate change orders, design changes and plans.

34. SPATCO's actions effectively made EPG the primary contractor on-site responsible for the job, but without authority vis-a-vis STS. EPG made efforts to accelerate the Projects and meet the change requests. But in the fall of 2005, nearly a year after the original due date for completion, SPATCO complained to EPG that EPG was not fulfilling its obligations under the Subcontracts.

35. Also in the fall of 2005, approximately October 2005, without adequate design drawings and without authority to negotiate the changes in the Projects or negotiate payment for the additional costs of the changes, EPG left the project sites.

36. SPATCO offered into evidence a summary of invoices and other documentation of expenses it incurred for material and labor to complete the projects.

37. SPATCO failed to prove that the additional expenses were required to complete work within the scope of EPG's obligations under the Subcontracts, that EPG did not perform the work under the Subcontracts or that any default on the part of EPG caused SPATCO to incur the additional costs. For example the first three line items of SPATCO's summary of costs (Plaintiff's Exhibit 9) were items that admittedly were removed by agreement from the scope of EPG's performance, and as to the remaining line items SPATCO offered no credible evidence, cited to no provision in the Subcontracts or any drawings or designs that established the items represented additional work within EPG's scope as defined by the Subcontracts. In fact Muckenfuss admitted that some of the line item charges set forth in the summary did not even correspond to a category or line item in the "schedule of values" used in bidding the contracts by SPATCO. Further SPATCO offered no testimony detailing what work was performed by SPATCO or others hired by it to support the assertion that the additional work represented work to be performed by EPG and for which SPATCO was entitled to credit.

38. Testimony of EPG's witnesses Walker and Parlman that the work summarized by SPATCO was outside the scope of the Subcontracts with EPG and was in fact additional work requested by STS was

unrebutted by SPATCO

39. Mahoney, SPATCO's witness, testified that SPATCO made no payment to EPG on the last invoice in the amount of $320,007.59 submitted to SPATCO for work performed by EPG .(SPATCO's Exhibit 9) (Def.'s Ex. 13).

40. EPG conceded that SPATCO is entitled to a credit of $7,850.00 for project delays. (Plaintiff's Exhibit 9)

## CONCLUSIONS OF LAW

41. This action was brought by the parties alleging reciprocal claims of breach of contract.

42. This court has jurisdiction of this matter based upon the diversity of the parties and the amount in controversy. 28 U.S.C. § 1332.

43. The undersigned has jurisdiction of this matter pursuant to the consent of the parties and the order of reference of the court. 28 U.S.C. § 636(c).

44. The parties do not dispute that the Subcontracts were entered between the parties, (Plaintiff's Exhibits 4, 5 and 6) and that the Subcontracts are governed by South Carolina law.

45. Each party had the burden of proving by a preponderance of the evidence the alleged breach of the Subcontracts and damages flowing from the breach to recover on its claims. See Jackson v. Midlands Human Resources Center, 296 S.C. 526, 374 S.E. 2d 505, (Ct. App. 1988).

46. A breach of contract is defined as a failure without legal excuse to perform any promise which forms the whole or part of a contract. See Black's Law Dictionary 188 (6th ed. 1990). A party's contractual duty is found in the obligation assumed by the party to the contract. Sechrest v. Forest Furniture Co., 141 S.E.2d 292 (N.C. 1965).

47. To recover for a breach of contract, a party must prove:

(1) a binding contract entered into by the parties;

(2) a breach or unjustifiable failure to perform the contract; and

(3) damage suffered by the complaining party as a direct and proximate result of the breach.

Fuller v. Eastern Fire & Cas. Ins. Co., 240 S.C. 75, 124 S.E.2d 602 (1962).

48. The issues before the Court are (1) whether EPG breached the Subcontracts by failing to perform work within EPG's scope of work under the Subcontracts ; (2) whether the work SPATCO claimed it performed or hired others to perform was work within EPG's scope of work under the Subcontracts; (3) whether SPATCO is entitled to damages, and (4) whether SPATCO breached its contract by failing to pay EPG its final invoice under the contract in the amount of $320,007.59 .

49. SPATCO failed to prove by a preponderance of the evidence that EPG breached its Subcontracts with SPATCO and that as a result

SPATCO was required to perform or cause others to perform work within EPG's scope of work under the Subcontracts.

50. SPATCO failed to prove by a preponderance of the evidence that it was damaged by any failure on the part of EPG to perform or cause others to perform work within the agreed upon scope of work under the Subcontracts.

51. EPG proved by a preponderance of the evidence that SPATCO breached its contract by failing to pay amounts owed under the contract, and SPATCO admitted that it has not payed the amount of $320,007.59 under the EPG's last invoice.

52. SPATCO is entitled to an offset of $7,850.00 as damages for delays that Walker calculated and EPG admitted were appropriate after taking into consideration weather and other factors causing delays.

**NOW THEREFORE, IT IS**

**ORDERED** that the causes of action asserted by SPATCO against EPG are dismissed; and it is

**FURTHER ORDERED** that judgment be entered against SPATCO in favor of EPG on its breach of contract claim in the amount of $312,157.59 and fees and costs to be determined.

**IT IS SO ORDERED.**

/s/ Robert S. Carr
ROBERT S. CARR
UNITED STATES MAGISTRATE JUDGE

Charleston, South Carolina

October 30, 2008

13